**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PENNSUMMIT TUBULAR, LLC and NEW SUMMIT MANUFACTURING, LLC, | Bankruptcy No.: 5:03-AP-50361 |
| Buyers, | |
| v. | |
| WILLIAM G. SCHWAB, | Civil Action No.: 3:05-CV-00981 (Judge Caputo) |
| Appellee. | |

## MEMORANDUM

Presently before the Court is Appellants' Pennsummit Tubular and New Summit Manufacturing's Appeal from Bankruptcy Judge John J. Thomas' April 14, 2005 judgment from the bench in favor of the Appellee, William G. Schwab. (Doc. 2-8.) The judgment of the Bankruptcy Court will be affirmed.

## BACKGROUND

Appellants, Pennsummit Tubular, LLC and New Summit Manufacturing, LLC (together known as "Buyers") were buyers under an Asset Transfer Agreement ("Agreement") pursuant to a Chapter 7 Bankruptcy proceeding involving Old Summit Manufacturing, LLC ("Debtor"). (Doc. 8 at 2.) Under the terms of the Agreement, most of the Debtor's assets including "accounts receivable" were to be transferred to the Buyers. (Doc. 7 at 3.) The Agreement also contained a provision that excluded certain assets from the transfer. (Id.) The excluded assets consisted of "cash and cash equivalents" whether on hand or in transit. (Doc. 11 at 11.) The Agreement closed on September 4, 2002 and the transfer from Debtor to Buyers occurred shortly after the closing. (Doc. 7 at 3.)

Appellee, William G. Schwab, Esquire ("Trustee") was appointed to be the Chapter 7 Panel Trustee for Debtor after the Chapter 11 case was converted to Chapter 7. (Id. at 2-3.) Trustee filed a complaint in Bankruptcy Court on November 14, 2003 claiming that certain checks transferred from Debtor to Buyers pursuant to the Agreement were excluded assets and therefore should not have been transferred. (Id. at 4.) Trustee sought to reclaim the amount of the checks that was paid to Buyers. (Id. at 3.)

The checks at issue are three checks ("Checks") for payment due to Debtor totaling $29,540.37. (Doc. 8 at 3.) The Checks were received by Debtor on September 3, 2002 (the day before the Agreement closing) and subsequently forwarded to Debtor's bank for deposit. (Id.) The Checks were posted by the deposit bank on September 4, 2002, but were not honored by the issuing bank until some date after September 4, 2002. (Doc. 7 at 3.) After the Checks were honored by the issuing bank, the Debtor transferred the entire amount of the Checks to Buyers. (Id.)

In Bankruptcy Court, Trustee argued that the Checks should not have been transferred to Buyers because under the terms of the Agreement, they were excluded assets and did not represent an "accounts receivable." (Doc. 7 at 4.) As noted above, "accounts receivable" were to be transferred to the Buyers and "cash or cash equivalents" were to be excluded from the transfer. (Id. at 3.) The Bankruptcy Court issued a judgment from the bench and determined that the Checks were subject to turnover to Trustee because the obligation (i.e., amount owed) represented by the receivable was suspended upon receipt of the checks. (Doc. 2-8; Doc. 11 at 24.) Thus, at the time of the Agreement closing, September 4, 2002, there was no receivable because the suspension of the obligation could be equated to a discharge of the obligation. (Doc. 11 at 25.)

2

On May 16, 2005, Buyers filed a Notice of Appeal of the Bankruptcy Court Order which decreed that the Checks were subject to turnover to Trustee.  (Doc. 1.)  In their appeal, Buyers claim that the Bankruptcy Court erred in its determination and reasoning that the proceeds from the checks were subject to turnover to Trustee because the checks were "cash or cash equivalents" and not "accounts receivable" or "other assets."  (Doc. 7 at 1.)  The Court has reviewed Buyers' Amended Brief (Doc. 7), Trustee's Brief (Doc. 8) and Buyers' Reply Brief (Doc. 9) and the matter is now ripe for disposition.

## JURISDICTION

The Bankruptcy Court's order dated April 14, 2005 constitutes a final order. (Doc. 2-8.)  As such the Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a), which provides that "the District Court of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." (West 2004)

## STANDARD OF REVIEW

A district court hearing an appeal of a bankruptcy court order reviews the bankruptcy court's "legal determinations *de novo*, its factual findings for clear error, and its exercise of discretion for abuse thereof." *In re Top Grade Sausage, Inc.*, 227 F.3d 123, 125 (3d Cir. 2000) (citations omitted).  On an appeal the district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.  Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the

bankruptcy court to judge the credibility of the witnesses.  FED. R. BANKR. P. 8013.

## DISCUSSION

### I. Accounts Receivable

Buyers contend that they are entitled to the proceeds from the Checks because as of the closing date of the Agreement the Checks had not been honored by the issuing bank. (Doc. 7 at 6-7.)  Thus, they contend that as of the closing date the Checks had not discharged the underlying "accounts receivable." (Id.) Issues involving dates of payment regarding checks are controlled by Pennsylvania Law.  *See Staff Builders of Phila., Inc. v. Ephraim Koschitzki*, 989 F.2d 692, 694 (3d Cir. 1993).  To determine when an obligation is discharged, it is necessary to examine the Pennsylvania Commercial Code.

Pursuant to the Pennsylvania Commercial Code, "if a note or an uncertified check is taken for obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken." 13 PA. CONS. STAT. ANN. § 3310 (b) (West 1999).  Furthermore, "In the case of an uncertified check, suspension of the obligation continues until dishonor of the check or until it is paid or certified.  Payment or certification of the check results in discharge of the obligation to the extent of the amount of the check." Id. § 3310(b)(1).

The Supreme Court of Pennsylvania recently interpreted these provisions.  *See Romaine v. Workers' Comp. Appeal Bd. (Bryn Mawr Chateau Nursing Home)*, No. 62 EAP 2004, 2006 Pa. Lexis 1016, at * 22 (Pa. June 22, 2006).  "In plain words, payment is conditionally made when the creditor . . . accepts payment by a check from the debtor . . . . If the check is honored, the condition is removed and payment relates back to

4

the date of acceptance (i.e., receipt)." *Id.* The court recognized that in the current commercialized society, it is very common to discharge obligations by the use of checks. *Id.* at 27. Modern commerce relies on the transfer of large volumes of transactions and "acceptance of checks as payments undergirds the financial world." *Id.*

The Court of Appeals for the Third Circuit, in *Staff Builders*, also discussed dates constituting "payment" with regard to checks. 989 F.2d at 694. In a situation involving a post-dated check, the court reasoned that a debt is paid on the date of the check and when honored, the debt will be deemed discharged as of the date on the check. *Id.* at 695. The court also reasoned that the effective date of payment for a check that is not post-dated is the date that is delivered. *Id.* (citing *Douglass v. Grace Bldg. Co.*, 383 A.2d 937, 940-941 (Pa. 1978)).

The reasoning of the Court of Appeals for the Third Circuit is similar to the reasoning of the Supreme Court of Pennsylvania. Both courts opined that once a check is honored, the date of payment and discharge is reflected by either the date the check was received, or in the case of a post-dated check, the date written on the check.

In their brief, Buyers cite to the Supreme Court's decision in *Barnhill v. Johnson*, 503 U.S. 393 (1992) to advance the position that a check does not discharge a debt until it is honored. (Doc. 7 at 8.) The Court of Appeals for the Third Circuit has concluded that the *Barnhill* decision is limited to interpretation and application of § 547(b) of the Bankruptcy Code dealing with transfers made on or within 90 days of the bankruptcy filing. *Staff Builders*, 989 F.2d at 695. Buyers concede that the current action does not involve § 547 of the Bankruptcy Code. (Doc. 7 at 10.) Therefore, the decision is of no real significance

in determining the present issue.

In the present case, the Checks were received by Debtor on September 3, 2002, the day before the Agreement closed. (Doc. 7 at 3.) The Checks were then posted by Debtor's bank on September 4, 2002 and were honored by the issuing bank some date after September 4, 2002. (Id.) Based on the rule articulated by the Supreme Court of Pennsylvania in *Romaine*, payment was conditionally made when Debtor received and accepted the Checks on September 3, 2002. When the Checks were subsequently honored by the issuing bank, the condition was removed and payment related back to the date that Debtor received and accepted the checks, September 3, 2002.

September 3, 2002 reflects the date of payment and therefore as of the closing date of the Agreement, September 4, 2002, there was no longer a receivable. An account receivable is defined as "an account reflecting a balance owed . . .". *Black's Law Dictionary* (8th ed. 2004). In the present case, the Checks received by the Debtor were in payment for an obligation (i.e., balance owed). As the Bankruptcy Court noted, at the time of the Agreement closing, there was no receivable because the obligation represented by the Checks was suspended and subsequently discharged. The Court agrees that at the time the Agreement closed, the obligation represented by the Checks was discharged and accordingly there was no longer a receivable to be included in the transfer. Therefore, the Bankruptcy Court's judgment will be affirmed.

## II. Cash or Cash Equivalents

Buyers also contend that the Bankruptcy Court erred in its determination that the Checks constituted "cash equivalents" in transit. As noted above, after the Checks were honored, they constituted payment and discharge of an obligation as of the date they were

6

received, September 3, 2002.   Therefore, as of the closing date of the Agreement, September 4, 2002, the Checks were no longer checks in the conventional sense.   The Checks essentially converted to cash equivalents as of September 3, 2002 when the debt was suspended and subsequently discharged.  In accordance with the determination of the Bankruptcy Court, the Court agrees that as of September 4, 2002, the Checks could be considered "cash equivalents" in transit as payment on an obligation.  Thus, the Bankruptcy Court's judgment will be affirmed.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's decision that the Checks discharged the "accounts receivable" and represented "cash equivalents" in transit and therefore were subject to turnover to the Trustee pursuant to the Agreement will be affirmed.

An appropriate Order follows.


July 20, 2006                                           /s/ A. Richard Caputo
Date                                                     A. Richard Caputo
                                                         United States District Judge


7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PENNSUMMIT TUBULAR, LLC and NEW SUMMIT MANUFACTURING, LLC, | |
| Appellants, | Bankruptcy No.: 5:03-AP-50361 |
| v. | |
| WILLIAM G. SCHWAB, | Civil Action No.: 3:05-CV-00981 (Judge Caputo) |
| Appellee. | |

## ORDER

**NOW**, this 20th day of July, 2006, **IT IS HEREBY ORDERED** that the decision of the Bankruptcy Court on April 14, 2005 (Doc. 2-8.) is **AFFIRMED**.


/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge

8